**ATS, INC., and Liberty Mutual**
**Insurance Company,**
**Appellants,**

v.

**Kenneth LISTENBERGER,**
**Respondent.**

**No. ED 81955.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 3, 2003.

Application for Transfer to Supreme Court Denied July 14, 2003.

Application for Transfer Denied
Aug. 26, 2003.

Ryanearson, Suess, Schnurbusch & Champion, L.L.C., Debbie S. Champion, St. Louis, MO, for appellant.

Lathrop & Gage, L.C., Brent W. Baldwin; Scott J. Dickenson, St. Louis, MO, for respondent.

MARY K. HOFF, Judge.

ATS, Inc. (Employer) and Liberty Mutual Insurance Company (Insurer) appeal from the trial court's grant of summary judgment in favor of Kenneth Listenberger (Employee), which held that Employer and Insurer did not have a subrogation interest in any recovery made by Employee against his former attorneys for an alleged failure to timely file a claim against

a tortfeasor (the tortfeasor) who caused physical injury to Employee. We affirm.

The trial court resolved this case after hearing argument on mutual summary judgment motions filed by the parties. The motions were presented to the trial court with the stipulation that the matter involved a sole legal issue which could be resolved by interpreting how Section 287.150 RSMo 1994[1] applied to the following facts as agreed between the parties.

On October 26, 1994, Employee was employed by Employer and sustained injuries in an automobile accident (accident) during the scope and course of his employment. Insurer provided worker's compensation coverage to Employer during the relevant period.

As a result of the injuries he sustained in the accident, Employee filed a claim for compensation with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation against Employer. Consequently, Insurer paid benefits to Employee on his worker's compensation claim, including medical payments totaling $89,985.10, total disability payments in the amount of $127,138.70, and permanent disability or lump sum settlement in the amount of $125,000.00.

Employee hired attorneys to pursue a claim against the tortfeasor to recover for the physical injuries arising out of the accident. The attorneys failed to file the personal injury action against the tortfeasor within the time prescribed by the applicable statute of limitations, and Employee's action against the tortfeasor was dismissed. Subsequently, Employee brought a legal malpractice action against those attorneys. Employee later settled that claim and dismissed his legal malpractice action with prejudice.

Employer and Insurer likewise failed to pursue a claim against the tortfeasor in a timely manner.

Upon learning of Employee's settled legal malpractice claim, Employer and Insurer filed a petition for declaratory judgment, requesting a judgment declaring that Section 287.150 gave them the right to recover in subrogation against any recovery Employee obtained from his former attorneys. The parties filed cross-motions for summary judgment, stipulating that a ruling on the motions would dispose of all the issues. The parties filed memoranda and the trial court heard oral argument. The trial court held that Employer and Insurer did not have a subrogation interest in Employee's recovery against his former attorneys and entered judgment in favor of Employee, against Employer and Insurer. This appeal followed.

■ In appeals from summary judgment, we "review the record in the light most favorable to the party against whom judgment was entered," and our review is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Whether to grant summary judgment is purely an issue of law. *Id.* Because the trial court's judgment is based upon the record submitted and the law, we "need not defer to the trial court's order granting summary judgment." *Id.*

The moving party bears the burden to show a right to judgment flowing from material facts about which there is no genuine dispute. *Id.* at 378. Here, the record reveals there is no genuine dispute about the material facts. Thus, we must decide whether Employee has shown his entitlement to judgment as a matter of law on Employer's and Insurer's petition for declaratory judgment.

**1.** Subsequent statutory references are to RSMo 1994, unless otherwise indicated.

In their only point, Employer and Insurer argue that the trial court erred in granting summary judgment for Employee in that Section 287.150 gives an employer a subrogation interest in an injured employee's recovery from an attorney who negligently fails to file a claim against a tortfeasor who causes physical injury because the attorney is a "third person" who is "liable" to the employee under Section 287.150.

Section 287.150 provides, in pertinent part:

> Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover.

Clearly, the statute provides employers a subrogation interest in an employee's recovery against a third person who is liable to that employee for a physical injury. The question becomes, however, whether an employee's attorney becomes a third person liable to an employee for an injury under Section 287.150 when that attorney fails to timely file a claim against a tortfeasor liable for the employee's physical injury.

The issue presented is a question of first impression in Missouri appellate courts. Other jurisdictions have reached differing results when considering this issue under pertinent state statutes. For instance, Illinois and Iowa courts have held that their workers' compensation subrogation statutes do not extend to recoveries by injured employees against their negligent attorneys. *Mosier v. Danz*, 302 Ill.App.3d 731, 235 Ill.Dec. 823, 706 N.E.2d 83, 88 (1999); *Sladek v. K Mart Corp.*, 493 N.W.2d 838, 840–41 (Iowa 1992).

In *Mosier*, the court concluded that an attorney's failure to file a timely action against a tortfeasor who caused the employee's injury did not constitute an injury within the meaning of Illinois's applicable subrogation statute. *Mosier*, 235 Ill.Dec. 823, 706 N.E.2d at 88. In reaching this conclusion, *Mosier* considered the reasoning of another Illinois opinion, *Woodward v. Pratt, Bradford & Tobin, P.C.*, 291 Ill. App.3d 807, 226 Ill.Dec. 32, 684 N.E.2d 1028 (1997). *Id.* at 87–88. The *Woodward* court, recognizing that the nature of the employee's action against his negligent attorney was for pecuniary injuries to intangible property interests, determined that cause of action was personal to employee, was not assignable, and could not be transferred to the employer as contemplated by the subrogation statute. *Woodward*, 291 Ill.App.3d at 814, 226 Ill.Dec. 32, 684 N.E.2d 1028. The *Mosier* court determined that the attorney's failure timely to file suit against the tortfeasor who caused the employee's injury was not a proximate cause of the injury suffered by the employee. *Mosier*, 235 Ill.Dec. 823, 706 N.E.2d at 88. The *Mosier* court therefore held that employers were not entitled to a workers' compensation lien in legal malpractice cases filed by injured employees against their negligent attorneys. *Id.*

In *Sladek*, the court recognized that the policy behind Iowa's workers' compensation subrogation statute was to encourage employers to pay bills and benefits with the expectation that they could recoup payments from third parties responsible for employees' injuries. *Sladek*, 493 N.W.2d at 840–41. It concluded, however, that this policy did not extend to the point of allowing employers subrogation on injured employees' legal malpractice claims against former attorneys. *Id.* at 839–41.

In reaching this conclusion, the *Sladek* court contemplated Iowa's definition of "injury" in its subrogation statute, and noted the statute equated "injury" with the term "personal injury," which obviously meant injury to the body, impairment of health, or disease. *Id.* at 840. Given this definition, the court determined that a recovery from negligent attorneys for failing to pursue tort actions had nothing to do with workers' statutorily included or covered injuries. *Id.*

We find the case law from Illinois and Iowa persuasive, given the nature of Employee's cause of action against his negligent former attorneys. Missouri's definition of the term "injury" for the workers' compensation subrogation statute, which is found in Section 287.020, likewise is significant to our resolution of the issue before us. Section 287.020 defines injury, for the purposes of Section 287.150, as:

> [V]iolence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom.

As Employee contends, this definition contemplates recovery for physical injury, which is distinguishable from the strictly economic loss compensated by a legal malpractice claim. *See White v. Auto Club Inter–Ins. Exch.*, 984 S.W.2d 156, 159–60 (Mo.App. W.D.1998). Thus, we conclude that the malpractice or negligence action held by Employee here against his negligent attorney is not for the type of physical "injury" contemplated by Section 287.150.

Employer's and Insurer's arguments that an employee's negligent attorney is a "third person" liable under Section 287.150, based on Oregon and New Jersey decisions which allow workers' compensation liens to attach to proceeds of legal malpractice actions for mishandling of workers' third-party negligence actions, do not persuade us otherwise. In *Toole v. EBI Cos.*, 314 Or. 102, 838 P.2d 60, 62 (1992), the Oregon Supreme Court held that a statutory lien of an insurer or a self-insured employer on the proceeds of an injured worker's recovery against a negligent third party extended to the proceeds of a malpractice action against the worker's attorney based on the attorney's mishandling of the worker's third-party negligence action. It held that the malpractice action was wholly derived from the claim against the third party, partially relying on Oregon's clear legislative history.

In *Frazier v. New Jersey Mfrs. Ins. Co.*, 142 N.J. 590, 667 A.2d 670, 676 (N.J.1995), the New Jersey Supreme Court held malpractice claims were derivative of third-party claims and were thus subject to workers' compensation liens. When the Supreme Court of New Jersey considered this issue in *Frazier*, it examined other New Jersey decisions that held that workers' compensation liens attached to employee's uninsured motorist provisions in insurance policies. *Frazier*, 667 A.2d at 674–75. The New Jersey Supreme Court noted these decisions found recoveries under uninsured motorist provisions were "the functional equivalent of a recovery from the actual third-party tortfeasor." *Id.* "[I]n effect, an uninsured motorist provision is a contractual substitute for a tort action against an uninsured motorist ... [T]he acts of the third-party tortfeasor produce the recovery to which the compensation lien attaches." *Id.* at 674 (internal quotation marks omitted) (*quoting Midland Ins. Co. v. Colatrella*, 102 N.J. 612, 617, 510 A.2d 30 (1986)). Extending this

analysis to legal malpractice claims, the New Jersey Supreme Court concluded legal malpractice claims that were derivative of claims against the actual tortfeasor were subject to a workers' compensation lien. *Frazier*, 667 A.2d at 676–79.

In contrast, Missouri courts examining whether workers' compensation statutes allow employers' compensation carriers that had paid benefits to employees to subrogate their claims against automobile liability carriers obligated to pay under uninsured motorist clauses have held that uninsured motorist carriers were not third persons within the meaning of Section 287.150. *See Yaakub v. Aetna Cas. & Sur. Co.*, 882 S.W.2d 743, 745 (Mo.App. E.D. 1994); *Barker v. Palmarin*, 799 S.W.2d 117, 117–18 (Mo.App. W.D.1990) (subrogation allowed only for actions in tort; uninsured motorist actions sound in contract). *See also Cano v. Travelers Ins. Co.*, 656 S.W.2d 266, 270 (Mo. banc 1983) (workers' compensation carrier not entitled to offset workers' compensation benefits paid to worker against carrier's uninsured motorist liability); *Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156, 159 (Mo. banc 1977) (uninsured motorist liability cannot be reduced by amount of workers' compensation benefits). Applying the reasoning of the Missouri court decisions regarding uninsured motorist carriers leads us to conclude that an injured employee's negligent attorneys are not liable "third person[s]" as contemplated by Section 287.150, and legal malpractice claims may not be characterized as the functional equivalent of a recovery from a tortfeasor causing physical injuries.

In support of their position they should have a subrogation interest in Employee's legal malpractice recovery Employer and Insurer direct us to Missouri decisions that allow employers a subrogation interest when a medical malpractice claim is settled with a medical provider. Missouri courts have held that Section 287.150 applies to the settlement of medical malpractice actions against medical professionals who aggravate an employee's original injury and add to the employer's liability through increased workers' compensation. *See Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 917–18 (1950); *Farmer–Cummings v. Future Foam, Inc.*, 44 S.W.3d 830, 837 (Mo.App. W.D.2001). Significantly, these decisions are based on a determination that malpractice on the part of a physician which aggravates an employee's original physical injury is "not necessarily such an intervening act as to break the chain of causation between the original injury and the ultimate result, the aggravation being regarded as a probable consequence of the original injury." *Schumacher*, 232 S.W.2d at 917.

Employee's legal malpractice claim here differs significantly from the medical malpractice claims considered in *Schumacher* and *Farmer–Cummings* in that the attorneys' failure to file the personal injury action against the tortfeasor within the statute of limitations period did not physically aggravate the original bodily injury to Employee and did not add to the Employer's worker's compensation liability. Thus, those cases do not convince us we should consider Employee's former attorneys as liable "third person[s]" under Section 287.150.

■ Employer and Insurer additionally argue that to deny them a subrogation interest in Employee's legal malpractice settlement proceeds would result in double recovery by Employee. This argument cuts both ways. An employer has the right on its own to sue tortfeasors for an injured employee's damages. *State ex rel. Royal–McBee Corp. v. Luten*, 390 S.W.2d 931, 934 (Mo.App. E.D.1965). Therefore, if an employer's attorney fails to initiate

such an action within the limitations period, the employer has recourse against its own attorney. To allow an employer a subrogation interest in an injured employee's legal malpractice recovery against the employee's attorney could result in double recovery to the employer. If there is to be windfall in such a situation, it should go to the injured employee rather than to the employer or insurer. *See, e.g., Douthet,* 546 S.W.2d at 159–60 (in a situation where permitting an insurer to reduce its liability on uninsured motorist coverage would be a windfall to insurer, windfall should go to injured person rather than to insurer).

Moreover, extending Section 287.150 to include employees' negligent attorneys as liable third persons would, in effect, give employers the right independently to sue attorneys with whom they have no relationship. *See General Box Co. v. Missouri Utils. Co.,* 331 Mo. 845, 55 S.W.2d 442, 446 (1932) (subrogation statute contemplates that both employer and employee are real parties in interest and either may bring suit for himself and as trustee of express trust for benefit of other without joining other).

Additionally, we find the policy concerns which disfavor assignment of legal malpractice claims apply equally to the subrogation of such claims under consideration here. In *White,* the court noted the public policy concerns inherent in assigning legal malpractice claims, and concluded that assignment of such claims could "restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client." *White,* 984 S.W.2d at 160, (internal quotation marks omitted) (*quoting Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal. Rptr. 83, 87 (1976)).

In conclusion, our consideration of "third person" liability and "injury" in Missouri's workers' compensation subrogation statute, as well as our review of prior decisions in uninsured motorist and medical malpractice situations, persuades us that Employer and Insurer do not have a subrogation interest in any recovery made by Employee against his former attorneys for legal malpractice. The trial court did not err in granting summary judgment in favor of Employee.

Due to our conclusion, we need not address other arguments presented by the parties.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., Presiding Judge and GEORGE W. DRAPER III, Judge, Concur.